

EOD
09/28/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JOHN R. PRELL, | § | Case No. 04-41667 |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |
| McCREEK PARTNERS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 04-4154 |
| | § | |
| JOHN R. PRELL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Before the Court is the "Complaint to Determine Dischargeability of Debt and Objection to Discharge" (the "Complaint") filed by McCreek Partners, LLC (the "Plaintiff") pursuant to 11 U.S.C. §§ 523 and 727. The Court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(I) –(J). This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.[1]

**I. BACKGROUND**

The Defendant owned a single family residence located at 8421 Suva Street in Downey, California (the "California Property"). In June 1994, the Defendant executed a deed of trust (the "Deed of Trust") purporting to convey the California Property to Judy

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

Jacobson ("Jacobson"). Jacobson was a friend of the Defendant's and managed the California Property for him. Among other things, she collected rent from tenants living in the California Property and used the rent to pay the mortgage, taxes and insurance on the California Property. She also marketed the California Property for sale.

The Defendant placed the Deed of Trust into escrow with an entity called Downey Escrow. The purpose of this arrangement was to allow Jacobson to complete a sale of the California Property if she found a suitable buyer. The Defendant was working in the Philippines at the time, was frequently inaccessible, and may not have been available to execute the paperwork necessary to complete a sale of the California Property in a timely manner if a suitable buyer were found. The Defendant instructed the escrow agent that it was to release the Deed of Trust only if a bona fide purchaser was located and only if the bona fide purchaser could provide its own financing and pay off the existing mortgage on the California Property.

In 2001, Defendant contacted the Plaintiff about leasing office space from the Plaintiff at 1524 Independence Parkway in Plano, Texas (the "Office Space"). The Defendant negotiated with David Nunley ("Nunley") to reach an agreement on the terms of the lease. Nunley was a leasing agent for DMC Properties, which manages the property where the Office Space is located.

Nunley informed the Plaintiff that DMC Properties would require a financial statement from the Defendant showing the Defendant's net worth. Accordingly, the Defendant provided a financial statement (the "Financial Statement") to Nunley on or about October 25, 2001. The Financial Statement indicated that the Defendant had a net worth of $579,000. The assets listed on the Financial Statement included the California

Property (valued at $390,000) as well as assets located in Thailand and belonging to a health/weight loss business known as the Kettering Institute (valued at $130,000).

Nunley forwarded the Financial Statement to the Chief Financial Officer for DMC Properties', Keith Heil ("Heil"), who had the authority to approve a lease of the Office Space. Prospective tenants were required to have a net worth of at least $500,000. Without both the California Property and the Kettering Institute's assets, the Defendant's net worth would have been less than $500,000, and DMC Properties would not have approved the Plaintiff to rent the Office Space.

Neither Heil nor anyone else at DMC Properties or McCreek Partners, LLC investigated the veracity of the representations on the Financial Statement or the Defendant's credit worthiness when deciding whether to approve the Plaintiff to lease the Office Space. On or about October 29, 2001, the Plaintiff and Defendant executed a lease agreement for the Office Space for a term of 63 months commencing on November 1, 2001 (the "Lease"). The monthly base rental was to be $1,500 for the first year of the lease and was to increase $100 for each subsequent year.

The Defendant subsequently defaulted on his obligations under the Lease. The Plaintiff filed a lawsuit against the Defendant in the 416th Judicial District Court of Collin County, Texas, Cause No. 416-00218-03, *McCreek Partners, LLC v. John Prell, d/b/a Kettering Institute*, (the "State Court Lawsuit") for damages incurred as a result of the Defendant's default under the Lease. The state court entered a judgment against the Defendant on March 12, 2004 in the amount of $110,515.63 plus attorneys' fees in the amount of $9,000, court costs, and post-judgment interest at the rate of 5% per annum (the "State Court Judgment").

From January 1, 1999 until May 30, 2002, the Defendant did business in the health/weight loss industry under the name Kettering Institute. The Defendant also operated a health/weight loss business in Thailand with a Thai business partner. Prior to delivering the Financial Statement to DMC Properties and executing the Lease, the Defendant and his Thai business partner had a falling out. The Defendant left Thailand, where all of the Kettering Institute's assets were located, and returned to the United States. In or around 2002, after the Defendant returned to the United States, and after the Defendant had delivered the Financial Statement to DMC Properties and executed the Lease, the Defendant learned that his former business partner in Thailand was in the process of converting the Kettering Institute's assets there. The Defendant concluded that it would be impossible to win a lawsuit in Thailand against a Thai citizen and, therefore, abandoned the Kettering Institute's assets located in Thailand.

At some point in 2004, after the entry of the State Court Judgment, the Defendant authorized the release of the Deed of Trust from escrow to Jacobson and authorized Jacobson to record it. The Defendant initiated the bankruptcy case associated with this adversary proceeding by filing a petition for relief under Chapter 7 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on September 12, 2005 (the "<u>Petition Date</u>"). Jacobson recorded the Deed of Trust after the Petition Date.

The Plaintiff timely filed proof of its claim against the Defendant in the amount of $119,515.63 based on the State Court Judgment. In this adversary proceeding, the Plaintiff seeks a judgment (i) that the Defendant's debt to it is non-dischargeable pursuant to Bankruptcy Code §§523(a)(2)(A) and/or 523(a)(2)(B), (ii) denying the Defendant a discharge in bankruptcy pursuant to Bankruptcy Code §727(a)(5), and (iii) awarding the

Plaintiff the full amount of its claim against the Defendant along with attorneys' fees and costs. The Plaintiff alleges that the Defendant made intentional, material misrepresentations on his Financial Statement and that he orally made intentional, material misrepresentations regarding his financial condition in order to induce the Defendant into leasing office space to the Plaintiff. The Plaintiff also alleges that the Defendant's discharge should be denied because he failed to list the California Property in the schedules of assets he filed in his bankruptcy case and/or because he failed to disclose the transfer of the California Property to Jacobson in his Statement of Financial Affairs.

On October 4, 2004, the Court entered an Order abating this adversary proceeding based on the Debtor's conversion of his Chapter 7 case to Chapter 13. On July 20, 2005, the Court entered an Order converting the case back to Chapter 7. The Court tried the Plaintiff's Complaint on June 8, 2006 and, at the conclusion of the trial, scheduled this matter for later ruling.[2]

## II. DISCUSSION

As a predicate legal matter, §523(a) excepts individual debts from discharge, as opposed to §727(a), which prevents a discharge of all debts. Exceptions to discharge or dischargeability should be construed in favor of the debtor. *See Fezler v. Davis (In re Davis)*, 194 F.3d 570 (5th Cir. 1999). The creditor bears the burden of proof and must establish each of the required elements of a claim under §523(a) or §727 by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re*

---

[2] The Defendant appeared *pro se* at trial and orally requested a continuance of the trial. The Court denied the Defendant's request.

*Acosta*, 406 F.3d 367 (5th Cir. 2005); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).

### A. 11 U.S.C. §727(a)(5)

Bankruptcy Code §727(a)(5) states that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. §727(a)(5). The initial burden of going forward with evidence is on the objector, who must introduce more than merely an allegation that the debtor has failed to explain losses. Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened. *See First Texas Savings Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992-993 (5th Cir. 1983).

Here, the Plaintiff argues that the Defendant has failed to satisfactorily explain the transfer of the California Property to Jacobson. Under California law, the California Property was transferred to Jacobsen when the deed was finally delivered to her. *See* CAL. CIV. CODE ANN. §1054 and 1057. This did not occur until after the entry of the State Court Judgment and less than a year before the Petition Date.

A "satisfactory explanation" has not been conclusively defined for purposes of §727(a)(5), but a debtor must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct. *See, e.g., Rawlings v. Tapp (In re Tapp)*, 339 B.R. 420, 427 (Bankr. W.D .Ky. 2006) (citing 6 Lawrence P. King *Collier on Bankruptcy* ¶ 727.08 (15th ed. rev.)). A satisfactory explanation "must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial

6

transactions." *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir. 1966). The explanation must eliminate the court's need to speculate as to what happened to the asset. *In the Matter of D'Agnese*, 86 F.3d 732, 735 (7th Cir. 1996). The court must be convinced of the truth of the debtor's explanation as to what happened to the asset, not the wisdom of the debtor's disposition of the asset. *Id*.

In this case, the Plaintiff has established that the Defendant transferred California Property, which was a substantial asset, under unusual circumstances. The Defendant failed to satisfactorily explain the transfer of the California Property in such a manner as to convince the court of good faith and businesslike conduct. *See In re Tapp*, 339 B.R. at 427. It appears that the Defendant transferred the California Property to his friend, Jacobson, in order to remove it from the reach of his creditors, especially the Plaintiff, shortly after Plaintiff obtained State Court Judgment and not for any legitimate purpose. The Defendant did not receive any payment from Jacobson for the California Property.

The Defendant failed to provide the Court with any documentation in connection with the transfer. The only documentation provided to the Court was the Deed of Trust with the recording stamp that the Plaintiff provided. The Defendant also has not provided sufficient evidence regarding the value of any equity that he had in the California Property at the time of the transfer.

Under California law, the grantor may waive the condition precedent to the delivery of the deed from escrow and authorize the delivery to the grantee. *See San Filippo v. Vita*, 186 P.2d 163, 166 (Cal. Dist. Ct. App. 1947); *Moore v. Trott*, 122 P. 462, 465-66 (Cal. 1912). In this case, however, the Defendant has not explained whether he waived the terms of the escrow, and, if so, why he waived them. Essentially, the Court is

left with nothing more than an "uncorroborated hodgepodge" of transactions related to the transfer of the California Property that does not completely make sense unless the Court assumes impropriety on the Defendant's part. *See Baum v. Earl Millikin, Inc.*, 359 F.2d at 814. The Court, therefore, concludes that the Defendant should be denied a discharge pursuant to §727(a)(5) of the Bankruptcy Code.

### III. CONCLUSION

If any one ground for a denial of discharge is established, the Court does not need to decide the propriety of any of the other grounds. *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177 (5th Cir. 1992); *In re Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992). Because the Court finds ample support for the denial of Debtor's discharge pursuant to §727(a)(5), it is not necessary to address Plaintiff's remaining contentions under §523(a)(2) of the Bankruptcy Code.[3] The Court will enter a separate judgment consistent with this Memorandum Opinion.

Signed on 9/28/2007

*Brenda T. Rhoades*    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[3] In any event, the Plaintiff would not have prevailed on his claims under §523(a)(2)(A) or (B). Section 523(a)(2)(A), which excepts from discharge debts accrued "for money property services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud," specifically excludes statements "respecting the debtor's or an insider's financial condition." With respect to §523(a)(2)(B), which applies to the use of a materially false written statement in order to obtain "money property services, or an extension, renewal or refinancing of credit," the Plaintiff failed to show that the Financial Statement was materially false at the time it was provided to the Plaintiff in connection with the lease of the Office Space.